UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TONYA PARKS, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:22-CV-991-SDJ |
| | § | |
| AIG, ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

The five plaintiffs in this case describe themselves as whistleblowers "who complain of a pattern, culture, and custom in the Oklahoma County Courthouse of coordinated retaliation and harassment by public officials to violate civil rights for exposing corruption." (Dkt. #1 ¶ 1). Each plaintiff claims to have exposed illicit activity at the Oklahoma County Courthouse involving Timothy Henderson, a former Oklahoma state court judge, and to have suffered retaliation in the form of "deprivation of Constitutional rights, loss of property and/or money, and false criminal charges." (Dkt. #1 ¶ 12). According to Plaintiffs, the alleged retaliatory actions were performed or sanctioned by various current and former Oklahoma state officials. *See generally* (Dkt. #1).

Absent from Plaintiff's [sic] Original Complaint is any connection to the Eastern District of Texas that would support venue in this court under controlling federal law. Therefore, in the interest of justice, this case will be transferred to the Western District of Oklahoma.

**I.**

Venue statutes "are drawn with necessary generality and usually give a plaintiff a choice of courts, so that he may be quite sure of some place in which to

1

pursue his remedy." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The prerequisite to this, however, is that the plaintiff must initiate a lawsuit in a court where venue is proper. This is determined under the general venue statute where the cause of action alleged in a case does not implicate a special venue statute. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc). Under the general venue statute, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

When a district court is not a proper venue for a civil action, it is authorized to transfer a civil action *sua sponte* to a district court that is a proper venue. *EEOC v. Tim Shepherd M.D., PA*, No. 3:17-CV-02569-X, 2020 WL 13556550 (N.D. Tex. Jan. 3, 2020). Under 28 U.S.C. § 1406(a), a federal district court is authorized to transfer a "case laying venue in the wrong division" to "any district or division in which it could have been brought" if the court finds it is "in the interest of justice" to transfer the case. 28 U.S.C. § 1406(a). District courts have broad discretion in determining whether to transfer a case *sua sponte* under section 1406(a). *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) ("[A] district court may transfer a case upon a motion or sua sponte.").

In establishing venue, the plaintiff carries the burden of proof and "[t]he court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Broadway Nat'l Bank v. Plano Encryption Techs.*, LLC, 173 F.Supp.3d 469, 473 (W.D. Tex. 2016).

## II.

Plaintiffs Tonya Parks, Bennie Gibson, Frances Gibson, Nyanza Cook, and Alexander Bednar claim venue is proper in this court because "[a] substantial part of [the] events and omissions giving rise to [Plaintiffs'] claims occurred in Collin County, [Texas]." (Dkt. #1 ¶ 3). But the allegations in Plaintiffs' complaint, taken as true, demonstrate precisely the opposite. Virtually every act or omission complained of by Plaintiffs occurred in Oklahoma. Plaintiffs' complaint fails to identify even a single act or omission giving rise to Plaintiffs' claims that occurred in Collin County, Texas, or for that matter anywhere else in the Eastern District of Texas.

**A. Allegations against the Oklahoma Defendants**

Plaintiffs have sued Oklahoma County, Oklahoma, as well as several current and former Oklahoma state officials. The Oklahoma state officials include former judge Timothy Henderson, Oklahoma County District Attorney David Prater (sued in his official and individual capacities), former Oklahoma Attorney General Mike Hunter, and sheriff deputies Melissa Abernathy and Brett Slimp. Although Plaintiffs' complaint is not a model of clarity, the Court understands Plaintiffs' claims to ultimately arise from "unethical, unlawful conduct at the Oklahoma County Courthouse" engaged in by former judge Henderson. (Dkt. #1 ¶ 7). Noting that Henderson was "removed from the Oklahoma County bench and subjected to criminal

3

investigation in March of 2021," (Dkt. #1 ¶ 15), Plaintiffs assert that they had "warned the State of Oklahoma and entities created to address corruption" that certain public officials, such as Henderson, were involved in unethical and unlawful conduct, (Dkt. #1 ¶ 7), but that no action was taken against Henderson. (Dkt. #1 ¶ 17); *see also id.* (contending that Hunter and Oklahoma Governor Kevin Stitt "were noticed by Plaintiffs of Henderson's corruption, systemic civil rights deprivation, and no substantive action was taken").

According to Plaintiffs, Henderson and defendant Prater established a custom and policy of "deny[ing] a public defender to an accused person who bails out of jail," and that this practice was "systemic." (Dkt. #1 ¶ 21). Prater and Henderson are also accused of "inaugurat[ing] a custom and policy of unlawful *ex parte* communications between the District Attorney's office and district judges," and of engaging in a "practice of conducting investigations and dictating subjective outcomes/personal agendas to court sheriffs as employees." (Dkt. #1 ¶¶ 22–23).

On their face, all these allegations concern various purported acts of misconduct that occurred in Oklahoma, involving Oklahoma officials, and that specifically involve legal matters in Oklahoma County.

Plaintiffs go on to claim that they were all similarly harmed "through retaliation involving [] Henderson and public servants believed to have been recruited to target Plaintiffs after they reported to the State of Oklahoma improper abuse of office." (Dkt. #1 ¶ 8); (Dkt. #1 ¶ 12) (asserting that each Plaintiff "exposed corrupt activity at the Oklahoma County Courthouse," involving Henderson, and each

4

Plaintiff "suffered retaliation by Oklahoma State and County employees," in the form of false criminal charges, loss of property and/or money, and deprivation of constitutional rights). According to Plaintiffs, the Oklahoma Defendants "have a policy of coordinated retaliation against persons who report judicial corruption; by conducting wrongful investigations, arrests, and prosecutions without probable cause and without due process." (Dkt. #1 ¶ 10).

In regard to specific retaliatory acts against Plaintiffs, the complaint states that Henderson "supervised and directed state and county employees to retaliate against Plaintiffs by *inter alia*: <u>falsifying court documents, judges' orders and court docket entries</u>, meeting *ex parte* to organize retaliatory acts or acts to violate due process," and "using court clerk stamps to backdate and falsify documents." (Dkt. #1 ¶ 14). Such misconduct also is alleged to have included "fabricating false probable cause affidavits and warrants" and "manipulating procedure in violation of rules and due process." (Dkt. #1 ¶ 14). Plaintiffs Bennie Gibson and Alexander Bednar point to pending misdemeanor charges against them at the Oklahoma County Court, allegedly initiated at Henderson's direction and "involving false probable cause affidavits." (Dkt. #1 ¶ 19). Plaintiff Nyanza Cook alleges that she "caught Henderson backdating a warrant of arrest for her son" and that "[a]fter exposing corruption, her family was forced to forfeit thousands of dollars of bail under suspicious circumstances." (Dkt. #1 ¶ 20). It appears that the Gibson Plaintiffs and Plaintiff Tonya Parks also complain about the proceedings of a probate matter in Oklahoma, although the precise nature of the complaint is unclear. *See* (Dkt. #1 ¶ 2 n.3). Finally,

Plaintiff Bednar believes his Oklahoma law license was suspended or otherwise taken from him through improper proceedings—again in Oklahoma. *See* (Dkt. #1 ¶¶ 25, 27, 34).

Based on these factual allegations, Plaintiffs assert a Fifth Amendment takings claim, Fourth Amendment claims based on false probable cause affidavits, a request for a preliminary injunction as to pending state criminal proceedings in Oklahoma, and a declaratory judgment that (1) "policies at the Oklahoma County Courthouse," as described in the complaint, are "unconstitutional," and (2) the processes employed by Oklahoma authorities to deprive Plaintiff Bednar of his Oklahoma law license violated the federal constitution. *See* (Dkt. #1 ¶¶ 26–34).

Although this summary does not include every allegation against the Oklahoma Defendants, suffice it to say that it is clear from Plaintiffs' complaint that a substantial part of the events or omissions giving rise to the claims against these Defendants occurred in Oklahoma County, Oklahoma, in the Western District of Oklahoma, and that no such events or omissions occurred in the Eastern District of Texas.[1]

---

[1] The Court notes that the complaint includes the assertion that Defendants "violated Plaintiff Bennie Gibson's civil rights, for his protected free speech activity in Texas." (Dkt. #1 n.2); *see also* (Dkt. #1 n.10) (stating that "Plaintiff Bennie Gibson exercised his First Amendment Rights to free speech from his home in Texas when he had a frictional conversation with Defendant Henderson's friend, an attorney whom the family caught involved in a 'sham sale' of their deceased relative's home in Oklahoma," and implying that as a result, B. Gibson was "a victim of Henderson's corruption"). Even taking these allegations as true, they fail to articulate any First Amendment claim, occurring in Texas or elsewhere. A "frictional conversation" does not amount to an allegation of an action violating anyone's First Amendment rights, and Plaintiffs do not assert any First Amendment claim in the "Claims" section of their complaint. Nor is there any indication that Mr. Gibson resides in the Eastern District of Texas. To the contrary, Mr. Gibson's "verification," attached to the

### B. Allegations against the Insurer Defendants

Plaintiffs have also sued two insurance companies, which are identified as follows: "AIG, a New York insurance company who insures employees of the State of Oklahoma," and "Chicago Title, a California escrow company." (Dkt. #1 ¶ 2) (cleaned up). Although the claims against these insurer defendants are vague, again there is no connection to the Eastern District of Texas.

As to AIG, Plaintiffs appear to believe they are entitled to receive the proceeds of a 2018-2019 AIG policy covering "civil rights claims," and more specifically insurance benefits related to acts of Oklahoma state officials or employees that violate civil rights. *See* (Dkt. #1 ¶ 2 n.2); *see also* (Dkt. #1 ¶ 33) (seeking a declaratory judgment that Plaintiffs are entitled to "benefits under AIG's policy from 2018-2019"). Whatever the merits of this declaratory judgment claim against AIG, the acts or omissions giving rise to any such claim occurred in Oklahoma, not in the Eastern District of Texas. *See supra* Part II.A.

As to Chicago Title, the sum total of the allegations involving this Defendant are that Chicago Title purportedly "participated in a conspiracy to defraud the estate of Plaintiff Frances Gibson, retaliate against the Gibson Parks family, and conducted a 'sham transaction' involving funds transferred from California," all concerning the Gibson/Parks Plaintiffs' probate matter in Oklahoma. (Dkt. #1 ¶ 2 n.3). Here, the only alleged connection to Texas is that "[t]he record keeper for Chicago Title's Oklahoma operations is in Dallas." (Dkt. #1 ¶ 2 n.3). Since most of the City of Dallas lies in the

---

complaint, indicates that he resides in Tarrant County, Texas, which is in the Northern District of Texas. (Dkt. #1-1 at 2).

Northern District of Texas, not the Eastern District of Texas, there is no reason to believe the referenced "record keeper" for Chicago Title is in the Eastern District of Texas. Regardless, the mere fact that a record keeper for an insurer defendant is within this District does not support venue where, again, the subject matter of the alleged misconduct is in Oklahoma.

## C. Transfer to the Western District of Oklahoma

The Court concludes that this case was improperly brought in the Eastern District of Texas. In support of their claim that venue is proper in this District, Plaintiffs rely solely on 28 U.S.C. § 1391(b)(2), which states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." But as explained herein, *see supra* Part II.A–B, the allegations in Plaintiffs' complaint demonstrate that a substantial part of the events or omissions giving rise to their claims occurred in the Western District of Oklahoma, not the Eastern District of Texas. In this regard, the only connection to Texas in this case is that some of the Plaintiffs reside in Texas. *See, e.g.,* (Dkt. #1 ¶¶ 19–20). However, "the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district." *Lalla v. G&H Towing Co.*, No. CV SA-19-CA-0542-FB, 2019 WL 11626516, at *4 (W.D. Tex. July 26, 2019). Rather, "the Court looks to the defendant's conduct, and where that conduct took place." *Id.* Here, virtually all the alleged misconduct giving rise to Plaintiffs' claims took place in Oklahoma County,

Oklahoma. Venue in the Eastern District of Texas cannot be supported by 28 U.S.C. § 1391(b)(2).[2]

The Court will transfer this case to the Western District of Oklahoma. Venue in that district is proper under 28 U.S.C. § 1391(b)(2) because, as alleged in their complaint, a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in Oklahoma County, Oklahoma, in the Western District of Oklahoma.

### III.

For the foregoing reasons, it is **ORDERED** that this civil action is hereby **TRANSFERRED** to the United States District Court for the Western District of Oklahoma for further disposition.

**So ORDERED and SIGNED this 22nd day of December, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

[2] Although not asserted by Plaintiffs, venue in this District is also unsupportable under 28 U.S.C. § 1391(b)(1) because there is no allegation that any Defendant is a resident of Texas or of this District. 28 U.S.C. § 1391(b)(3) is also inapplicable because there is another district in which this action could otherwise have been brought, namely, the Western District of Oklahoma.